UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| RICKY WATSON, | ) | |
| Plaintiff, | ) | 3:21-CV-00244-DCLC-DCP |
| v. | ) | |
| K-VA-T FOOD STORES, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants K-VA-T Food Stores, Inc.'s ("K-VA-T") and Mark Smith's Motion for Partial Summary Judgment [Doc. 55]. Plaintiff Ricky Watson failed to file a response to Defendants' motion. Accordingly, this matter is now ripe for resolution. For the reasons that follow, Defendants' Motion for Partial Summary Judgment [Doc. 55] is **GRANTED IN PART**. The remainder of Defendants' motion is **DENIED AS MOOT**.

**I.     BACKGROUND**

This action concerns a traffic collision involving Defendant Mark Smith, an employee of Defendant K-VA-T, and Plaintiff Ricky Watson. Smith first obtained his commercial driver's license ("CDL") in 2004 in Kentucky [Doc. 55-2, pg. 11]. Smith grew up "around coal trucks all [his] life," and he worked as a driver for his uncle when he was young [*Id.*, pgs. 11-12]. Eventually, Smith studied the Kentucky CDL manual for six months and took his permitting test [*Id.*, pg. 12]. Smith took both a written and driving test to obtain his CDL [*Id.*]. Sometime after receiving his CDL, Smith began driving a tractor trailer hauling steel burial vaults for funeral homes [*Id.*, pg. 16]. Smith drove across 17 states and remained in that role for six years before being hired as a driver for K-VA-T in September 2020 [*Id.*, pgs. 16-17]. K-VA-T placed Smith in a probationary

period for 90 days after initially hiring him [*Id.*, pg. 17]. According to Smith, however, the only training K-VA-T provided him during that period was placing other drivers with him for two months to show him the stores he would drive to, how to make deliveries, and what to do when he arrived at the stores on his route [*Id.*, pg. 22]. The accompanying drivers also taught Smith about paying attention and the speed limits for the roads he would use [*Id.*]. Peggy Parris, a claims manager for K-VA-T, attested that "there is no information in [Smith's] file to indicate that at the time of hire he was not qualified to perform his duties . . . pursuant to his CDL[.]" [Doc. 55-4, pg. 2].

On the afternoon of December 26, 2020—91 days after being hired by K-VA-T—Smith drove his semi-truck southbound on I-75 [Docs. 2, ¶¶ 38-46; 55-2, pg. 17]. Just ahead of Smith, Watson began slowing down his car because traffic was slowing ahead of him [Doc. 2, ¶ 47]. Smith did not see that traffic was slowing and maintained his speed [*Id.*, ¶¶ 48-49]. Because Smith did not see that traffic was slowing, he struck the rear of Watson's car, completely disabling Watson's car as a result [*Id.*, ¶¶ 50-52]. Tennessee Highway Patrol Trooper James Capps completed a Tennessee Electronic Traffic Crash Report[1] for the December 2020 collision [Doc. 55-4, pg. 3]. Trooper Capps noted that Smith was following improperly at the time of the collision but was not distracted or under the influence of any substance [*Id.*, pg. 4]. He also noted that Watson was slowing down in the traffic lane immediately before the collision [*Id.*, pg. 6]. Trooper Capps stated that Smith and Watson were traveling in the same lane when Smith struck Watson [*Id.*, pg. 14]. That collision caused Watson's car to spin into the next lane and strike a third vehicle,

---

[1] The Court considers this report because Watson has failed to respond to Defendants' motion and raise any objections to the admissibility of the report.

which in turn struck a fourth vehicle [*Id.*]. Smith's truck came to a stop in the median, and Watson's car came to a stop in the traffic lane [*Id.*].

The parties offered diverging explanations for the cause of the collision. Watson alleged that Smith did not see that traffic was slowing because he was using a mobile device while driving, in violation of Tennessee law [Doc. 2, ¶¶ 71, 76-77]. But during his deposition, Watson admitted that he had no evidence that Smith was using a mobile device during the accident [Doc. 55-1, pg. 6]. Additionally, Watson testified that he did not have any basis for thinking that K-VA-T was intentionally negligent [*Id.*, pg. 4-5]. Watson's counsel also confirmed that Watson was not alleging intentional misconduct by Defendants [*Id.*, pg. 4].

For his part, Smith explained that he sneezed multiple times immediately before the collision, which prevented him from seeing that traffic was stopped in front of him [Doc. 55-2, pgs. 20-21]. Smith specifically noted "[i]t was like two or three sneezes right together" that took "two or three seconds" to subside [*Id.*, pg. 21]. Smith saw that there was traffic ahead of him before the sneezes began, but he could not tell whether traffic was stopped or moving at that point [*Id.*]. Smith was driving at 63 miles per hour before applying his brakes [Doc. 55-3, pg. 6].[2] Pictures from cameras mounted on Smith's truck show that the posted speed for that portion of I-75 was 70 miles per hour [*Id.*, pgs. 7-8]. Smith testified that he was more than 200 feet from Watson when he first began applying his brakes [Doc. 55-2, pg. 19]. Following the collision, K-VA-T convened an "accident review board" and investigated the crash [*Id.*, pg. 18]. K-VA-T subsequently terminated Smith because of the collision [*Id.*].

Watson filed a Complaint against Defendants in this Court, alleging various forms of

---

[2] During his deposition, Smith estimated that he was traveling at 65 miles per hour immediately before the collision [Doc. 55-2, pg. 19].

3

negligence, gross negligence, and negligence *per se* [*See generally* Doc. 2]. Against K-VA-T, Watson alleged claims for negligent and grossly negligent hiring, training, entrusting, retaining, qualifying, and supervising Smith [*Id.*, ¶¶ 63-71]. Watson further alleged that K-VA-T was negligent *per se* for violating a number of laws and regulations governing the operation of a vehicle and liable for the December 2020 collision under the doctrine of *respondeat superior* [*Id.*, ¶¶ 72, 80-88]. Against Smith, Watson asserted claims of negligence, gross negligence, and negligence *per se* for his role in the December 2020 collision [*Id.*, ¶¶ 75-79]. Watson also alleged a claim for combined and concurring negligence and gross negligence against both Defendants [*Id.*, ¶¶ 89-93]. Lastly, Watson sought punitive damages from Defendants [*Id.*, ¶¶ 94-99]. Defendants now move for partial summary judgment on Watson's claims for gross negligence [Doc. 55]. Watson failed to respond.[3] This matter is now ripe for resolution.

## II.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either

---

[3] Although Watson did not respond to Defendants' motion for partial summary judgment, he did file a notice withdrawing his claim for punitive damages, rendering that portion of Defendants' motion moot [Doc. 58, pg. 1]. Watson's counsel also stated Watson would withdraw his claim for punitive damages against Defendants during his deposition [Doc. 55-1, pg. 4]. Accordingly, the Court's analysis focuses on the remainder of Defendants' motion.

4

by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. When a motion for summary judgment is unopposed, as is the case here, the Court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). The Court, however, will not *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. *Id.* at 630 n.11.

Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). At summary judgment, the Court may not weigh the evidence, and its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough. *Id.* at 251–52. The Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Lansing Dairy*, *Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

Defendants argue that they are entitled to summary judgment on Watson's gross negligence claims [Doc. 57, pg. 2]. Tennessee law requires a plaintiff to show "a *conscious* neglect of duty or a callous indifference to the consequences" to establish gross negligence. *Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (emphasis added) (quotation omitted). Gross negligence is "not characterized by inadvertence." *Livingston v. High*

*Country Adventures, Inc.*, Nos. 97-5600, 97-5692, 1998 WL 466131, at *3 (6th Cir. July 30, 1998) (quoting *Kennedy v. Perry*, 688 S.W.2d 74, 78 (Tenn. Ct. App. 1984)). Rather, a party must establish the elements of a traditional negligence claim and that the act at issue was "done with utter unconcern for the safety of others" or "with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law" to show gross negligence. *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998) (quotation omitted); *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003) (quotations omitted); *see also Cook By & Through Uithoven*, 878 S.W.2d at 938–39 ("A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992))). Although a claim for gross negligence is ordinarily a question of fact, the Court may decide this issue "as a matter of law when the material facts are not in dispute" and "would permit a reasonable person to reach only one conclusion." *See Waterhouse v. Tenn. Valley Auth.*, 475 F. Supp. 3d 817, 826 (E.D. Tenn. 2020) (quoting *Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352 at *5 (Tenn. Ct. App. Jan. 27, 2004) (citations omitted)).

Defendants note that Smith held a valid CDL from Kentucky when he was hired and employed by K-VA-T and that the CDL was active during the collision [*Id.*, pg. 3]. They assert that Smith successfully completed a 90-day probationary period when K-VA-T initially hired him [*Id.*, pg. 4]. Defendants explain that the accident occurred because Smith experienced a series of multiple sneezes and did not see that traffic was stopped in front of him [*Id.*]. They state that an internal recording of Smith's truck showed he was traveling 63 miles per hour, which was below the posted speed limit of 70 miles per hour [*Id.*]. According to Defendants, the record does not

show that Smith was speeding or acting in reckless disregard for the safety of others at the time of the accident [*Id.*]. Defendants contend that the record also does not show that Smith was not qualified to perform his duties safely [*Id.*]. Lastly, Defendants argue that Watson admitted there were no facts to show that K-VA-T was intentionally negligent as to the accident [*Id.*, pg. 5].

Defendants have shown that Watson cannot establish gross negligence as a matter of law. *See Waterhouse*, 475 F. Supp. 3d at 826. As to Watson's claim regarding Smith's employment, the record shows Smith was qualified to operate a commercial motor vehicle during the December 2020 collision. Smith first obtained his CDL in 2004 and has maintained his license since that time. [Doc. 55-2, pg. 11]. He drove commercially for six years prior to K-VA-T hiring him in September 2020. [*Id.*, pgs. 16-17]. Smith successfully completed K-VA-T's probationary period, and Smith's personnel file with K-VA-T did not reveal any defects in his qualifications. [*Id.*, pgs. 17, 22; Doc. 55-4, pg. 2]. Moreover, nothing in the record suggests Smith jeopardized his CDL through prior reckless actions since he first received his CDL in 2004. Defendants' motion is **GRANTED** as to Watson's claims of gross negligence against K-VA-T for hiring, training, entrusting, retaining, qualifying, and supervising Smith, and those claims are **DISMISSED**.

As to Watson's claim regarding the December 2020 collision, the record shows that Smith collided with Watson after suffering a series of unfortunately timed sneezes that obstructed his field of vision. [Doc. 55-2, pgs. 20-21]. Smith was not speeding at the moment of his ill-timed sneezes, and Watson has not shown that Smith was engaged in any other reckless behavior while driving his truck. [Doc. 55-3, pgs. 6-8]. Indeed, Watson admitted that he did not have evidence that Smith was using a mobile device during the collision or any basis for thinking that K-VA-T was intentionally negligent [Doc. 55-1, pg. 4-6]. Watson's counsel also confirmed that Watson was not alleging intentional misconduct by Defendants [Doc. 55-1, pg. 4]. The absence of any

7

form of egregious conduct by Defendants shows that Watson cannot establish that Defendants acted "with utter unconcern for the safety of others" or "with reckless disregard . . . [such] that a conscious indifference to consequences is implied in law." *Menuskin*, 145 F.3d at 766. Accordingly, Defendants' motion is **GRANTED** as to Watson's claim of gross negligence against Smith for his actions during the collision and that claim is **DISMISSED**.

IV. **CONCLUSION**

Accordingly, for the reasons stated herein, Defendants' Motion for Partial Summary Judgment [Doc. 55] is **GRANTED IN PART**, and Watson's claims of gross negligence against Defendants are **DISMISSED WITH PREJUDICE**. The remainder of Defendants' motion is **DENIED AS MOOT**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge